UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEREMY TURNER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO; SACRAMENTO POLICE DEPARTMENT; OFFICER NEDELJKOVIC; OFFICER MOHAMMAD; and DOES 1–50,<br><br>Defendants, | No. 2:20-cv-01079-TLN-JDP<br><br>**ORDER** |

This action is before the Court on Defendants City of Sacramento, Sacramento Police Department, Officer Nedeljkovic, and Officer Mohammad's (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 12.) Plaintiff Geremy Turner ("Plaintiff") opposed the motion. (ECF No. 26.) Defendants replied. (ECF No. 30.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment. (ECF No. 12.)

///

///

///

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 29, 2019, Officer Nedeljkovic and Officer Mohammad were working uniformed patrol at Evergreen Shopping Center, located at 5575 Mack Road in Sacramento, California. (DSUF ¶ 1; Plaintiff's Responses and Objections to DSUF ("PRO"), ECF No. 26-1 ¶ 1.) During their patrol, the officers initiated a traffic stop on Plaintiff for a non-functional brake light.[2] (DSUF ¶ 2.) Plaintiff told the officers that he was on probation. (ECF No. 1 at 4; DSUF ¶ 4.) The officers conducted a record check which indicated that Plaintiff was a probationer[3] and a convicted felon. (DSUF ¶¶ 4–5; PRO ¶ 5.) The records check indicated that Plaintiff's listed probation address was 121 Majorca Circle in Sacramento, California.[4] (DSUF ¶ 6.) After Officer Nedeljkovic informed Plaintiff that a probation search would be conducted at the listed probation address, Plaintiff denied living there. (DSUF ¶ 7; PRO ¶ 7.)

The officers arrived at 121 Majorca Circle and were informed by Plaintiff's mother that Plaintiff had slept there as recently as July 28, 2019.[5] (DSUF ¶ 8.) During the search, the

---

[1]  The following facts are taken from Defendants' Statement of Uncontroverted Facts ("DSUF") (ECF No. 12-2) and are deemed undisputed unless otherwise noted.

[2]  Plaintiff disputes this fact, arguing "the vehicle's rear bumper appeared to be replaced." (PRO ¶ 2.) Plaintiff does not explain how the state of the rear bumper is relevant or refutes Defendants' proffered fact that the officers initiated a traffic stop for a non-functional brake light. (*See id.*) Accordingly, the Court considers the fact undisputed for purposes of the motion. *See* Fed. R. Civ. Pro. 56(e).

[3]  Plaintiff disputes this, arguing he "told Officer Nedeljkovic that he was on probation." (PRO ¶ 4.) However, Plaintiff fails to explain how this creates a dispute about whether the officers conducted a records check. Accordingly, the Court finds this is not a genuine dispute. *See* Fed. R. Civ. Pro 56(e).

[4]  Plaintiff disputes this fact, arguing "[Plaintiff] denied living there." (PRO ¶ 6.) However, Plaintiff fails to explain how his denial creates a dispute about whether his listed probation address was 121 Majorca Circle. Accordingly, the Court finds this is not a genuine dispute. *See* Fed. R. Civ. Pro 56(e).

[5]  Plaintiff disputes this fact, arguing he "denied living there." (PRO ¶ 8.) However, Plaintiff fails to explain how his denial creates a dispute about whether or not his mother told the officers that he had slept there as recently as July 28, 2019. Accordingly, the Court finds this is not a genuine dispute. *See* Fed. R. Civ. Pro 56(e).

officers discovered that one of the bedrooms was locked.[6]  (DSUF ¶ 9.)  While searching Plaintiff's niece's bedroom, Officer Mohammad found a set of keys in a drawer next to a credit card inscribed with Plaintiff's name.[7]  (DSUF ¶ 10–11.)  Plaintiff admitted to staying in his niece's bedroom.[8]  (DSUF ¶ 12.)  The officers used the keys to unlock the locked bedroom and found a loaded AR-15, two unsecured shotguns, and ammunition.[9]  (DSUF ¶ 13–15; PRO ¶ 14–15.)  In a statement to Officer Nedeljkovic, Plaintiff admitted he had access to the keys, had been inside the locked bedroom before, and had seen the firearms.[10]  (DSUF ¶ 18.)  The officers

---

[6]  Plaintiff disputes this fact.  (PRO ¶ 9.)  In support, Plaintiff cites to his declaration which neither denies nor disputes the stated fact.  (ECF No. 26-2 at 2.)  Accordingly, the Court finds this is not a genuine dispute.  *See* Fed. R. Civ. Pro 56(e).

[7]  Plaintiff disputes this fact.  (PRO ¶¶ 10, 11.)  In support, Plaintiff cites to his declaration which neither denies nor disputes the stated fact.  (ECF No. 26-2 at 2.)  Accordingly, the Court finds this is not a genuine dispute.  *See* Fed. R. Civ. Pro 56(e).

[8]  Plaintiff disputes this fact.  (PRO ¶ 12.)  In support, Plaintiff cites to his declaration which neither denies nor disputes the stated fact.  (ECF No. 26-2 at 2.)  Accordingly, the Court finds this is not a genuine dispute.  *See* Fed. R. Civ. Pro 56(e).

[9]  Plaintiff disputes that the keys unlocked the locked bedroom.  (PRO ¶ 13.)  Plaintiff argues that his brother, a resident of 121 Majorca Circle, was present during the probation search and refused consent, which is evidenced by the locked door to his bedroom that officers broke open.  (PRO ¶ 13.)  In support, Plaintiff cites generally to his own declaration and the declaration of his counsel, Tiega-Noel Varlack.  (*Id.*)  However, nothing in the attached materials denies or disputes that the keys unlocked the locked bedroom.  There is an unidentified photograph of a door attached to the Varlack declaration but there is no indication that it represents the door in question or whether it establishes the keys did not work in the lock.  (ECF No. 26-12 at 1.)  Accordingly, the Court finds this is not a genuine dispute.  *See* Fed. R. Civ. Pro 56(e).

[10]  Plaintiff disputes his fact, citing Exhibit H to the Varlack declaration, wherein Plaintiff tells Officer Nedeljkovic: "I didn't know that was there.  Alright, I'm gonna keep it real.  I thought I gave my brother his key back.  That was my brother[']s key.  I knew the key was there.  I never had a key to that room.  That is my nephew's key."  (PRO ¶ 18 (citing ECF No. 26-21 at 5).)  Plaintiff's cited statement does not deny or dispute that he had access to the keys.  On the next page of the police report, Plaintiff states "I did have that key though.  I had the key because other people might need access."  (ECF No. 12-5 at 50.)  Plaintiff also states "I have been inside that room.  I never touched anything though."  (*Id.*)  Finally, Plaintiff states "I have seen them.  I have seen a shotgun and a rifle, but I have not touched them.  I do not play with guns."  (*Id.*)  Plaintiff does not provide any support to raise a dispute about whether he had been inside the room before or had seen the guns.  Accordingly, the Court finds this is not a genuine dispute.  *See* Fed. Rule. Civ. Pro 56(e).

arrested Plaintiff and transported him to jail.  (DSUF ¶ 19; PRO ¶ 19.)

Plaintiff initiated this action on May 28, 2020, alleging the following claims: (1) violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (2) *Monell* liability; (3) violation of 42 U.S.C. § 1981; (4) false arrest and imprisonment; (5) battery by a police officer; (6) violation of the Unruh Civil Rights Act, California Civil Code § 51.7; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress.  (ECF No. 1.) Defendants filed the instant motion for summary judgment on July 16, 2021.  (ECF No. 12.)

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id*. at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

In moving for summary judgment, Defendants do not address the merits of Plaintiff's claims individually. Rather, the thrust of Defendants' motion is that the officers' conduct was objectively reasonable because Plaintiff was a probationer. The Court will address Defendants' grounds for summary judgment in turn.

1                    A.      Reasonable Search and Arrest

2           Defendants argue the officers are entitled to qualified immunity because there was no

3    violation of a constitutional right and "Plaintiff's status as a probationer entitled the [o]fficers to

4    conduct a search of 121 Majorca Circle provided they had reasonable suspicion that it was, in

5    fact, his residence." (ECF No. 12-1 at 5–6.) Defendants argue the officers were reasonable in

6    their search of the residence because it was indicated by the records check that it was Plaintiff's

7    listed probation address. (*Id.*; DSUF ¶ 6.) In opposition, Plaintiff argues he "had a Fourth

8    Amendment Right to be free from false imprisonment and unreasonable search and seizure that

9    violated the terms of probation." (ECF No. 26 at 9.)

10          "Qualified immunity balances . . . the need to hold public officials accountable when they

11   exercise power irresponsibly and the need to shield officials from harassment, distraction, and

12   liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231

13   (2009). The determination of qualified immunity requires a two-step test: (1) whether facts

14   alleged, taken in the light most favorable to the injured party, show the defendants' conduct

15   violated a constitutional right; and (2) whether the right was clearly established. *Lacey v.*

16   *Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc). Defendants only address the first

17   prong, arguing the officers did not violate Plaintiff's constitutional rights. (ECF No. 12-1 at 5–6.)

18   As such, the Court need not and does not address the second prong.

19          The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a

20   search is determined "by assessing, on the one hand, the degree to which it intrudes upon an

21   individual's privacy and, on the other, the degree to which it is needed for the promotion of

22   legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). A court

23   may reasonably restrict a probationer's individual privacy rights further than that of a law-abiding

24   citizen. *U.S. v. Knights*, 534 U.S. 112, 119 (2001). The search of a probationer's residence

25   requires less than a probable cause standard — a reasonable suspicion of criminal activity will

26   suffice. *Id*. at 121; *see also Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987).

27          In the instant case, Defendants do not argue the officers had reasonable suspicion of

28   criminal activity occurring at Plaintiff's listed probation residence. (*See* ECF No. 12-1.) Instead,

they argue the warrantless search of 121 Majorca Circle was objectively reasonable solely because of Plaintiff's status as a probationer and their reasonable suspicion that he lived at that address. (*Id.* at 6.)

The terms of probation define the allowable scope of the search. *People v. Bravo*, 43 Cal. 3d 600, 606, 608 (1987). A searching officer must have "advance knowledge of the search condition" before conducting a search. *In re Jaime P.*, 40 Cal. 4th 128, 133 (2006). "Unlike parole searches — where a searching officer's knowledge of a person's parole status *alone* is enough to justify a search of the parolee's person or any property under his control, including his residence — the permissible scope of a probation search is circumscribed by the terms of the search clause, and the scope may vary." *People v. Romeo*, 240 Cal. App. 4th 931, 951 (2015). Conditions of probation may be imposed so long as they are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." Cal. Pen. Code § 1203.1(j). Courts therefore attempt to individualize the terms and conditions of probation to fit the offender. *See People v. Contreras*, 237 Cal. App. 4th 868, 878 (2015). A search condition is not mandated by statute for every probationer, and probation search clauses are not worded uniformly. *See U.S. v. King*, 736 F.3d 805, 811 n.1 (Berzon, J., dissenting). For example, a judge may limit the scope of a defendant's consent to searches for particular contraband, such as drugs or stolen property, or place spatial limits on where searches may take place. *Romeo*, 240 Cal. App. 4th at 951.

Here, Defendants fail to cite the terms of Plaintiff's probationary search condition. This is fatal to Defendants' motion, as the Court cannot determine whether the search of 121 Majorca Circle fell within the scope of the probation condition. It bears mentioning that the Supreme Court in *Knights* — the case Defendant relies on — started its opinion by describing the terms of the specific search condition at issue. 534 U.S. at 114. Absent evidence of the terms of Plaintiff's probation search condition, the Court declines to find that the officers' actions were objectively reasonable as a matter of law. Accordingly, the Court DENIES Defendants' motion for summary judgment because there is a genuine issue of material fact as to whether the officers'

warrantless search of Plaintiff's listed probation residence and his subsequent arrest violated the Fourth Amendment.[11]

B.  Intentional and Negligent Infliction of Emotional Distress

Defendants next contend they are immune from Plaintiff's state law claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") under California Government Code § 820.4 ("§ 820.4"). (ECF No. 12-1 at 9–10.) Section 820.4 provides in relevant part, "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." Cal. Gov. Code § 820.4. As discussed, there exists a material issue of fact whether the officers exercised due care when they performed a warrantless search at 121 Majorca Circle. Accordingly, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's IIED and NIED claims.[12]

C.  *Monell* Liability

Lastly, Defendants argue Plaintiff's *Monell* claim fails as a matter of law because Plaintiff has not provided evidence that shows the City has a custom or policy which violated Plaintiff's constitutional rights. (ECF No. 12-1 at 10.) In opposition, Plaintiff argues the City's "failure to include training and/or a policy on warrantless searches in either its general order or it[s] reference manuals" represents a failure to train by omission and represents a deliberate indifference to Fourth Amendment rights. (ECF No. 26 at 13.) In reply, Defendants argue "Plaintiff has not provided any credible evidence that the Sacramento Police Department does not

---

[11] Defendants additionally argue the officers are entitled to qualified immunity and statutory immunity under California Penal Code § 847(b) and are therefore entitled to summary judgment with respect to Plaintiff's fourth claim for false arrest and imprisonment. (ECF No. 12-1 at 7–8.) However, there is a question of material fact regarding the officers' knowledge of Plaintiff's probation terms prior to conducting a warrantless search of the residence, leading to Plaintiff's arrest. Therefore, the Court finds there is a genuine issue of material fact as to whether Plaintiff's arrest pursuant to a warrantless search was a violation of Plaintiff's Fourth Amendment rights.

[12] In opposition, Plaintiff does not respond to Defendants' immunity arguments under § 820.4 but instead argues the officers "broke the door down in front of [Plaintiff] and his family and this was extreme and outrageous and went against all bounds of decency." (ECF No. 26 at 11.) In reply, Defendants provide an affidavit from Officer Mohammad refuting Plaintiff's description of events. (ECF No. 12-4.) However, the Court declines to discuss this matter as it was not a basis for Defendant's motion. (*See* ECF No. 12-1.)

provide such training regarding the Fourth Amendment." (ECF No. 30 at 5.) Defendants also argue Plaintiff cannot show that his Fourth Amendment rights were violated because he is a probationer, permitting law enforcement to conduct a search of his residence without need for a warrant. (*Id.*)

To bring a *Monell* claim against a municipality, a plaintiff must establish "the local government had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [he] suffered." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The inadequacy of police training may serve as the basis of *Monell* liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To impose liability against a municipality for deficiencies in its policies or procedures, or for a failure to adequately train its employees, Defendants' omissions must amount to "deliberate indifference" to a constitutional right. *Id.*; *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). To succeed, Plaintiff must demonstrate specific training deficiencies and either (1) that policy-making officials were aware of a pattern of constitutional violations, or (2) that training is obviously necessary to avoid constitutional violations. *Harris*, 489 U.S. at 390–91.

Absent identification of a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Monell*, 436 U.S. at 691) (internal quotations omitted). To establish a policy or custom of unconstitutional searches, Plaintiffs must show a pattern through the similarity of incidents, their timing, and subsequent actions by Defendants, if any. *Valdez v. Leeds*, No. 1:17-cv-00430-LJO-SAB, 2019 WL 4138945, at *13 (E.D. Cal. Aug. 30, 2019).

Here, Plaintiff fails to demonstrate specific training deficiencies regarding warrantless searches, failing to show that general order and reference manuals represent the entirety of officer training, or that this omission represents a failure of City of Sacramento to train its officers on the Fourth Amendment. Even if the evidence proffered by Plaintiff did represent a failure to train regarding warrantless searches, Plaintiff has not shown that (1) that policy-making officials were

9

aware of a pattern of constitutional violations, or (2) that training is obviously necessary to avoid constitutional violations. *Harris*, 489 U.S. at 390–91.

Additionally, Plaintiff does not establish a policy or custom of unconstitutional searches by showing a pattern of similar incidents. (*See* ECF No. 26.) The only evidence offered by Plaintiff that could potentially be construed as arising out of the City's alleged failure to train are two incidents which are too few and too dissimilar to represent a policy or custom of unconstitutional searches. *See Meehan v. Cnty. of L.A.*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient to establish custom). First, Plaintiff refers to the warrantless search at 121 Majorca Circle. Second, Plaintiff refers to a separate vehicle search on or around October 12, 2019, when police approached Plaintiff and claimed he was parked on the sidewalk, before searching the vehicle and confiscating $3,720.00 in cash. (ECF No. 26 at 6; ECF No. 26-2 at 2.) The first search concerns the warrantless search of a probationer's residence after a traffic stop, while the second incident concerns the search of a probationer's vehicle with no additional supporting evidence about the circumstances of the search. Even viewed in the light most favorable to Plaintiff, the undisputed evidence falls short of establishing a "persistent and widespread" practice of performing warrantless searches on the residences of probationers without prior knowledge of authorizing probation terms, such that it constitutes "permanent and well settled policy." *Trevino*, 99 F.3d at 919.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's *Monell* claim (Claim Two).[13]

///

---

[13]  Claim Two includes allegations that the City's policies and practices violated Plaintiff's Fourteenth Amendment rights. (ECF No. 1 at 7.) However, Plaintiff's opposition fails to mention the Fourteenth Amendment in the context of *Monell* violations. (*See* ECF No. 26 at 12–13.) Plaintiff does provide statistical information from 2013–2020 purporting to show racial disparities in arrests and fines within the Sacramento Police Department's jurisdiction. (ECF No. 26 at 13.) However, even if the Court were to construe this statistical information as an argument opposing summary judgment as to *Monell* liability premised on a policy or custom of Fourteenth Amendment violations, Plaintiff provides no evidence showing that the officers in the instant case were motivated by any racially discriminatory motive. Therefore, Plaintiff cannot show City of Sacramento had a custom or policy "that was the 'moving force' behind the constitutional violation [he] suffered." *Whitaker*, 486 F.3d at 581.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 12) is hereby GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to Plaintiff's *Monell* claim (Claim Two) and DENIED in all other respects. The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**DATED:** May 19, 2022

Troy L. Nunley
United States District Judge